**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 03-cv-1587-WYD-MEH

EDISYNC SYSTEMS LLC,

    Plaintiff,

v.

CENTRA SOFTWARE, INC.;
CENTRA SOFTWARE, LLC; and
SABA SOFTWARE, INC.,

    Defendants.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.    Invalidity ............................................................................................................... 2

        1.    Legal Standard for Obviousness ................................................................ 2

            a.    The Level of Ordinary Skill in the Art. ......................................... 2

            b.    The "Scope and Content" of the Prior Art. .................................... 3

            c.    Differences Between the Prior Art and the Claims ....................... 3

            d.    Secondary Considerations .............................................................. 5

        2.    Bartholomew and the Other Cited Art Invalidate the Asserted Claims, as Construed ................................................................................................... 5

    B.    Non-Infringement ................................................................................................. 6

        1.    Legal Standard for Infringement ............................................................... 6

        2.    "Coordinating" .......................................................................................... 7

        3.    "To the Display Means" .......................................................................... 10

        4.    Claim 23 .................................................................................................. 12

III. CONCLUSION ............................................................................................................ 13

IV. MOVANT'S STATEMENT OF MATERIAL FACTS ................................................. 13

## TABLE OF AUTHORITIES

**Cases**

Athletic Alternatives, Inc. v. Prince Mfg., Inc.,
   73 F.3d 1573 (Fed. Cir. 1996).................................................................................... 6

C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,
   911 F.2d 670 (Fed. Cir. 1990)...................................................................................... 1

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)..................................................................................................... 1

Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,
   145 F.3d 1303 (Fed. Cir. 1998).................................................................................. 13

Cybor Corp. v. FAS Techs., Inc.,
   138 F.3d 1448 (Fed. Cir. 1998).................................................................................... 6

KSR Int'l Co. v. Teleflex, Inc.,
   550 U.S. 398 (2007)..................................................................................................... 2

Markman v. Westview Instruments, Inc.,
   517 U.S. 370 (1996)..................................................................................................... 6

Monsanto Co. v. Syngenta Seeds, Inc.,
   503 F.3d 1352 (Fed. Cir. 2007).................................................................................... 7

PC Connector Solutions LLC v. SmartDisk Corp.,
   406 F.3d 1359 (Fed. Cir. 2005).................................................................................... 6

Riverwood Int'l. Corp. v. RA Jones & Co.,
   324 F.3d 1346 (Fed. Cir. 2003).................................................................................... 3

Tokai Corp. v. Easton Enterprises, Inc.,
   632 F.3d 1358 (Fed. Cir. 2011).................................................................................... 5

V-Formation, Inc. v. Benetton Group SpA,
   401 F.3d 1307 (Fed. Cir. 2005).................................................................................... 6

Wahpeton Canvas Co., Inc. v. Frontier, Inc.,
   870 F.2d 1546 (Fed. Cir. 1989).................................................................................... 7

#
**Statutes**

§ 112................................................................................................................................ 6

35 U.S.C. § 102................................................................................................................ 3

35 U.S.C. § 103........................................................................................................... 2, 3

Defendants, Centra Software, Inc., Centra Software, LLC, and Saba Software, Inc. (collectively, "Saba"), move for summary judgment dismissing the complaint on the ground that the asserted claims of EdiSync's patent are invalid, and are not infringed by Saba.

## I.　　INTRODUCTION

EdiSync has asserted only claims 21-23 of U.S. Patent No. 5,799,320 ("the '320 patent") against Saba in this litigation.[1]

In its June 15, 2012, Order, the Court construed certain terms in claim 21. [Dock. No. 258]. For the most part, the Court adopted the broad constructions EdiSync had proposed. Those constructions, however, cause claim 21 to cover the system in the prior art Bartholomew patent (U.S. Patent No. 4,939,509) ("Bartholomew") (Ex. 4). Saba therefore seeks summary judgment of invalidity.

Saba additionally moves for summary judgment of non-infringement, for the reasons described in more detail below.

## II.　　ARGUMENT

The Court should grant summary judgment under Rule 56 where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment is as appropriate in a patent case as it is in any other case." C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 672 (Fed. Cir. 1990).

---

[1] The Exhibits referenced in this memorandum are attached to the accompanying Declaration of Michael I. Shamos, Ph.D., J.D., in Support of Defendants' Motion for Summary Judgment ("Shamos Decl."). The Exhibits include a copy of the originally-issued '320 patent (Ex. 1) and the two reexamination certificates (Exs. 2 and 3).

### A.   Invalidity

Each of claims 21-23 is invalid under 35 U.S.C. § 103 as obvious over Bartholomew in view of one or more secondary prior art references.

#### 1.   Legal Standard for Obviousness

Under 35 U.S.C. § 103, a court would find a patent obvious (and thus invalid) "if the differences between the subject matter [claimed in the patent] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." In <u>KSR Int'l Co. v. Teleflex, Inc.</u>, 550 U.S. 398 (2007), the Supreme Court re-affirmed a four-part framework to define the inquiry as to obviousness. Under that approach, a court would:

   a. resolve "the level of ordinary skill in the pertinent art";

   b. determine "the scope and content of the prior art";

   c. ascertain the "differences between the prior art and the claims at issue"; and, if necessary,

   d. utilize "secondary considerations … to give light to the circumstances surrounding the origin of the subject matter sought to be patented."

<u>Id.</u> at 406.  The Court held: "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."  <u>Id.</u> at 427.

##### a.   The Level of Ordinary Skill in the Art.

For purposes of this motion, Defendants will agree with EdiSync that a person of ordinary skill in the art with regard to the '320 patent would have had a bachelor's degree in

computer science or a related discipline, or equivalent experience, and experience analyzing, designing, or implementing collaboration software.

### b. The "Scope and Content" of the Prior Art.

"Prior art" under § 103 includes any art that 35 U.S.C. § 102 describes. Riverwood Int'l. Corp. v. RA Jones & Co., 324 F.3d 1346, 1354 (Fed. Cir. 2003). The "scope" of the prior art relied upon for this motion includes:

- Bartholomew (Ex. 4);

- AT&T Computer Software Catalog, MS-DOS Software for the AT&T PC 6300 and PC 6300 PLUS ("the PC Software Catalog") (relevant pages attached as Ex. 5);

- AT&T System 85 PBX manual ("the Network Manual") (relevant pages attached as Ex. 6); and

- The ISDN Stipulation [Dock. No. 278].

### c. Differences Between the Prior Art and the Claims

As the accompanying Declaration of Michael I. Shamos, Ph.D., J.D., in Support of Defendants' Motion for Summary Judgment ("Shamos Decl.") explains (at ¶¶ 5-27), Bartholomew discloses a collaboration system identical to the collaboration system the '320 patent claims. In that declaration, Shamos describes the structure and operation of the Bartholomew collaboration system in detail and meticulously maps each of the limitations of the asserted claims to the components in that system. As each limitation of the asserted claims is clearly present in the prior art, the Court should declare those claims invalid as a matter of law.

Although EdiSync has previously made various arguments in support of patentability in its interrogatory answers and in the report of its expert, Gary Nutt, Ph.D., none appear to have merit. The following briefly summarizes and rebuts EdiSync's previous arguments, as Saba best understands them.

EdiSync had argued that a person of ordinary skill in the art would not understand that the shared application program that Bartholomew describes as an "editor" *necessarily* edits computer files. The prior art, however, includes copious examples of editors that EdiSync would concede are "file editors." Indeed, the PC Software Catalog describes more than <u>twenty</u> such "file editors," for use on PCs of the type Bartholomew discloses, i.e., the AT&T PC 6300. (Ex. 5 at 389-416).

EdiSync's expert, moreover, has conceded that one of ordinary skill in the art would have found it obvious to select a "file editor" as the shared application in Bartholomew. (Nutt Tr. (relevant pages attached as Ex. 8) at 38:5-40:10).

EdiSync had also argued that Bartholomew does not employ a "multi-tasking" processing means. Bartholomew, however, expressly states that "CCS program 20 allows both RAP program 21 and TAP[2] program 22 to run on PC 1 **concurrently**, i.e., on a time-shared basis." (3:45-47) (emphasis added). See also Shamos Decl. at ¶¶ 14-15. Such "concurrent" operation of the RAP and TAP programs clearly meets the agreed-to construction of "multi-tasking," namely, "running multiple different tasks and/or programs simultaneously." (Docket # 209-1 at 1).

EdiSync had also suggested that Bartholomew does not allow for "real-time" collaboration. Bartholomew, however, expressly states that "a conference by users of both PCs 1 and 2 with TAP 22 is established in **real-time**," (4:3-4) (emphasis added), and likewise describes

---

[2] Bartholomew uses the acronyms RAP and TAP to refer to the "Resident Application Program" and "Transient Application Program," respectively. (See Ex. 4 at 3:41-45). As explained in the Shamos declaration (at ¶¶ 11, 16) the TAP is the program (e.g., an editor) on the host PC that is being shared with the remote computers, and the RAP is the program on the host PC that is responsible for coordinating the funneling of keystrokes from the remote computers to the TAP and for coordinating the transfer of computer-renderable data from the TAP to the displays of the remote computers.

- 4 -

the system as providing a "**real-time** data conferencing feature." (4:5) (emphasis added). See also Shamos Decl. at ¶ 21.

Finally, EdiSync had also asserted that Bartholomew does not "coordinate file editing command execution" or "coordinate the transfer of data corresponding with and limited to file editing operations." In alleging that deficiency, however, EdiSync ignored the unmistakable description in Bartholomew of how the RAP program 21 performs both of those functions. See Shamos Decl. at ¶¶ 16-19, 22-23.

### d. Secondary Considerations

EdiSync has not identified secondary considerations the Court should consider; nor has it attempted to establish a nexus between any factor and the claimed invention. See Shamos Decl. at ¶ 28. Moreover, given the powerful evidence of the obviousness of using a "file editor" as the shared "editor" application suggested in Bartholomew, and indeed the concession by EdiSync's expert as to the obviousness of selecting such an editor, secondary considerations would carry little weight here, even if proven.

### 2. Bartholomew and the Other Cited Art Invalidate the Asserted Claims, as Construed

The Shamos declaration attaches a claim chart (as Ex. 10) setting forth, in separate columns: (1) each limitation of the asserted claims, (2) the Court's construction, if any, of the limitation, and (3) the disclosure of Bartholomew and the other prior art references that meets the limitation, as construed.

"Whether an invention would have been obvious at the time it was made is a question of law… based on underlying facts." E.g., Tokai Corp. v. Easton Enterprises, Inc., 632 F.3d 1358, 1366 (Fed. Cir. 2011). When, as here, the facts underlying the obviousness determination are not

in material dispute, the question of obviousness is a matter of law that can appropriately be resolved by the Court on summary judgment. Id., and cited cases.

The Court should therefore grant summary judgment that the asserted claims are thus invalid.

### B. Non-Infringement

Saba seeks summary judgment with respect to three distinct issues on which no genuine dispute of material fact exists.

#### 1. Legal Standard for Infringement

A patent infringement analysis involves two steps. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). First, the court must determine the meaning and scope of the patent claims. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384, 391 (1996) ("claim construction"). Second, the fact finder must then compare the accused device to the properly construed claims to determine whether the device infringes. Cybor Corp., 138 F.3d at 1454.

"Summary judgment on the issue of infringement is proper" where, as here, "no reasonable jury could find that every limitation recited in a properly construed claim . . . [is] found in the accused device." PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005). Courts have readily granted summary judgment of non-infringement in such situations. See id. (affirming grant of summary judgment of non-infringement where limitations not met); V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1312-1313 (Fed. Cir. 2005) (same); Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573,1583 (Fed. Cir. 1996) (same).

Defendants cannot infringe the asserted dependent claims if they do not infringe the asserted independent claim. "According to § 112, ¶ 4, claims in dependent form include all the limitations of the claim incorporated by reference into the dependent claim." Monsanto Co. v. Syngenta Seeds, Inc., 503 F.3d 1352, 1359 (Fed. Cir. 2007). "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." Id., quoting Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989).

### 2.     "Coordinating"

The asserted claims require that a PC (designated as the "host" computer) have a "means for coordinating" the execution of edits from and transfer of data to the other computers[3]:

> at least **one of the personal computers being designated host computer** for given filing editing operations **and *having* multitasking processing means for coordinating**….

(Ex. 3 at 1:31-35) (emphasis added).

This requirement can be illustrated as follows:



(See Shamos Decl. at ¶ 7).

"Coordinating" is done by the host computer

---

[3] Claim 21 recites, *inter alia*, "a plurality of personal computers…, at least one of the personal computers being designated host computer for given filing editing operations and having multitasking processing means for <u>coordinating</u> the execution of said file editing operations… inputted by at least the user of one of said personal computers, and for <u>coordinating</u> the transfer of data corresponding with and limited to said file editing operations from said host computer to the display means of the others of said plurality of personal computers." (Ex. 3 at 1:29-41) (emphasis added).

- 7 -

Not surprisingly, the key corresponding structure of the "means for coordinating" disclosed in the '320 patent specification, i.e., the I/O processor 28, forms part of the "host" PC, as illustrated below:



(See Shamos Decl. at ¶ 31).

By contrast, as explained in the Shamos declaration (at ¶¶ 29-40), the PCs in the Saba system do not coordinate the execution of edits and transfer of data to other computers, as the asserted claims would require for infringement. Rather, as shown in the diagram below (see Shamos Decl. at ¶ 35), a central server (the Saba CCS), which is not a PC, performs those functions.



- 8 -

The difference between the claimed system and the accused Saba system can be seen from the following side-by-side comparison:



Claimed System                    Saba System

Because the Saba system therefore does not meet this claim limitation, the Court should grant summary judgment of non-infringement.

As to this issue, EdiSync has previously asserted that, in the Saba system, certain participants can use their PCs to control who can join a conference and who will be allowed to perform certain acts such as editing a document. Specifically, the controlling participant's PC will send an instruction to the Saba CCS, and the Saba CCS will, in response, alter its configuration settings to thereafter manage the transfer of data to and from the various affected computers in accordance with the requested change.

The asserted claims, however, do not cover what those PCs do. Rather, they cover only "coordinating" editing and data transfer, the function that the Saba CCS performs. The Court's construction likewise identifies the corresponding structure as "hardware, software …which

- 9 -

enables a personal computing device to … coordinate both editing and data transfer." The '320 patent claims cover only a system in which a host PC, not a server, coordinates those operations.

Since, in the Saba system, the Saba CCS, not a "host" PC, performs the claimed "coordinating" functions, the Saba system does not infringe any of the asserted claims.

### 3. "To the Display Means"

This argument relates to the "markup/whiteboarding" features of the accused Saba system.

The asserted claims cover only a system in which the computer designated as the "host" PC has means for coordinating the transfer of computer-renderable information "to the display means" of the other computers.[4] As explained in the Shamos declaration (at ¶¶ 41-48), in the accused Saba system, none of the participating computers transmits computer-renderable information "to the display means" of the other computers. Rather, a computer transmits a request to the Saba CCS, and, if the Saba CCS approves the request, the Saba CCS then transmits an instruction to the respective client programs – not to the display means – of the other computers.

As shown in the diagram below (see Shamos Decl. at ¶ 42), in the accused Saba system, each participating computer has its own copy of the client program (which EdiSync asserts is an SUAP used for editing) and its own copy of a shape list (which EdiSync asserts corresponds to the "given computer file" of the asserted claims), and each respective client program makes changes to (edits) its own copy of the shape list upon receiving an instruction from the Saba CCS

---

[4] Claim 21 recites, *inter alia*, "a plurality of personal computers…, at least one of the personal computers being designated host computer for given filing editing operations and having multitasking processing means for coordinating the execution of said file editing operations… inputted by at least the user of one of said personal computers, and for **coordinating the transfer of data corresponding with and limited to said file editing operations from said host computer to the display means of the others of said plurality of personal computers**." (Ex. 3 at 1:29-41) (emphasis added).

to effect such a change.  Thus, the Saba system uses <u>multiple</u> programs to perform editing on <u>multiple</u> copies of the shape list.



EdiSync's expert, Dr. Nutt, stated repeatedly in his expert report (Ex. 7 at ¶¶ 100-106, 140, 147, 149, and 153), and confirmed at his deposition (Ex. 8 at 46:20-63:3, 210:14-214:9), that the asserted claims do not cover such a system.  Dr. Nutt asserted, for example, that "the prosecution history, the specification and the claims themselves clearly provide that [the claimed] 'editing' occurs using <u>the</u> single user application program and not <u>multiple</u> single user application programs."  (Nutt Report (Ex. 7) at ¶ 153; also see Nutt Tr. (Ex. 8) at 212:13-214:9).

As Dr. Shamos explains, however, in the accused Saba system, every participating computer has its <u>own</u> copy of the shape list, and every participating computer uses its <u>own</u> client program to effect changes to (edit) that list.  And, as noted above, Dr. Nutt conceded the claims do **not** cover the use of *multiple* application programs to execute editing operations on *respective* copies of a file, but instead require the use of only a single program to effect editing operations for all the computers.  E.g., Ex. 7 at ¶ 149 ("Again, the claims themselves, the specification and the entirety of the prosecution history clearly establish that the 'editing' occurs on **only a single**, single user application program.") (emphasis added).

This difference between the claimed system, in which only a single application program executes edits to only a single copy of a computer file, and the accused Saba system, in which multiple client programs execute edits to multiple copies of a shape list, can be illustrated as follows:



Claimed System                                              Saba System

Note how in the claimed system the "means for coordinating" transfers data to the display means of the remote PC, whereas in the accused Saba system the client programs each communicate only with the the Saba CCS. As noted, in the accused Saba system, data is not transferred from one PC "to the display means" of another PC, as required by the aserted claims.

Accordingly, the Court should grant summary judgment that the accused markup/whiteboarding features do not infringe the asserted claims.

### 4. Claim 23

Dependent claim 23 recites "means for contemporaneously transferring said data between said host computer and said remaining ones of said plurality of personal computers and transmitting said audio signals among the users." (Ex. 2 at 2:2-5). The Court has not yet construed this limitation. Because this is a means-plus-function limitation, the Court must identify the corresponding structure, if any, disclosed in the specification used to contemporaneously transfer both data and audio signals between the disclosed PCs. (Ex. 1 at

- 12 -

8:24-33). The Court should find that the only corresponding structure disclosed in the specification is the Integrated Digital Services Network (ISDN).[5] Accordingly, to infringe this claim, the accused Saba system would have to employ a structure that is the same as or equivalent to the ISDN. E.g., Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc., 145 F.3d 1303, 1308 (Fed. Cir. 1998).

As explained in the Shamos declaration (at ¶ 50), the accused Saba system does not use ISDN, but instead employs the Voice Over Internet Protocol (VOIP). EdiSync's expert, Dr. Nutt, acknowledged that ISDN and VOIP are not equivalents.[6] Therefore, the accused Saba system cannot infringe claim 23.

## III. CONCLUSION

For the reasons stated above, the Court should grant summary judgment of invalidity and non-infringement.

## IV. MOVANT'S STATEMENT OF MATERIAL FACTS

1. The Bartholomew patent is prior art to claims 21-23 of the '320 patent. (Ex. 4).

2. The PC Software Catalog is prior art to claims 21-23 of the '320 patent. (Ex. 5).

3. The Network Manual is prior art to claims 21-23 of the '320 patent. (Ex. 6).

4. The Integrated Services Digital Network is prior art to claims 21-23 of the '320 patent. (Docket # 278).

---

[5] At his deposition, Dr. Nutt was unable to identify any structure other than ISDN as the structure disclosed in the '320 specification corresponding to this means. See Nutt Tr. (Ex. 8) at 184:10-187:16.

[6] See Nutt Tr. at 187:17-188:4.

5.   In the accused Saba system, no PC contains "hardware, software and/or a combination thereof which enables [it] to coordinate both editing and data transfer." (Shamos Decl. at ¶¶ 29-40).

6.   In the accused Saba system, only the Centra Collaboration Server coordinates both editing and data transfer. (<u>Id.</u>)

7.   The Centra Collaboration Server is not a PC. (<u>Id.</u> at ¶ 29).

8.   In connection with the accused markup/whiteboarding features, each PC in the system uses its own client program to effect changes to its own local copy of a shape list. (<u>Id.</u> at ¶¶ 41-47).

9.   A client program having markup privileges can send a message to the Centra Collaboration Server requesting that a change be made to all replicated copies of the shape list. (<u>Id.</u>)

10.   Upon receiving a shape list change request from a participating personal computer, the Centra Collaboration Server will determine whether to approve the request and, if it approves the request, the Centra Collaboration Server will transmit an instruction to the client programs of all participating computers to effect the requested change to their respective shape lists. (<u>Id.</u>)

11.   Upon detecting a change to its shape list, each personal computer will generate computer-renderable data corresponding to the change (e.g., the drawing of a circle of a specified radius, at a specified location, using a specified color) for presentation on its display. (<u>Id.</u>)

12.   Any VOIP used in the accused systems is not the same as or equivalent to the ISDN disclosed in the '320 specification. (<u>Id.</u> at ¶ 50).

Respectfully submitted this 28th day of November, 2012.

/s/ Robert M. Abrahamsen
James J. Foster
Robert M. Abrahamsen
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
Telephone: 617-646-8000
Email: jfoster@wolfgreenfield.com
Email: rabrahamsen@wolfgreenfield.com
**Attorneys for Centra Software Inc.; Centra Software, LLC; and Saba Software, Inc.**

## **CERTIFICATE OF SERVICE**

I certify that on November 28, 2012, I electronically filed the above document using the Court's electronic filing system which will electronically serve the same upon all counsel of record.

/s/Robert M. Abrahamsen